UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

NOV 19 2009

Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
Houston Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIM. NO. 4:09CR609 |
| v. ) | |
| ) | |
| ADIL R. CASSIM, A.K.A. ) | Count 1: 18 U.S.C. § 371 |
| "Kali" and "The_Rulers_Back", ) | (Conspiracy) |
| MATTHEW D. CHOW, A.K.A. "RL", ) | |
| ) | |
| Defendants. ) | |

## SUPERSEDING INDICTMENT

### Count One

### (Conspiracy)

THE GRAND JURY CHARGES THAT:

I.   Introduction

1.   During its existence from at least 1997 until 2007, "Rabid Neurosis" ("RNS") was an Internet music piracy group.

2.   RNS was responsible for unlawfully reproducing and distributing thousands of copyrighted songs over the Internet, many of which were subsequently reproduced and distributed hundreds of thousands of times. These reproductions were done for the benefit of the members of RNS and other affiliated piracy groups, in that, by getting a reputation for providing pirated materials that were previously unavailable on the piracy scene, RNS members were granted access to massive online digital libraries of unlawfully copied music, video games, software, and movies.

3.   In addition to being a piracy group, RNS was a "pre-release group;" that is, the group was often the original source or "first-provider" of pirated music that was distributed on the Internet.

Members of RNS sought to acquire digital copies of songs and albums before their commercial release in the United States. The supply of pre-release music was often provided by music industry insiders, such as employees of compact disc manufacturing plants, radio stations, and retailers, who typically receive advance copies of music prior to its commercial release date. During the course of its existence, RNS gained notoriety within the Internet piracy scene as the most successful Internet music piracy group in the world, as measured by both the quantity and quality of the infringing sound recordings it distributed.

4. RNS also used several other methods to acquire albums to distribute over the Internet. One method used by the group was to obtain copyrighted works immediately upon commercial release and "race" to be the first music piracy group to distribute the album on the Internet. These releases were often called "Tuesday releases" since the music industry traditionally releases new albums on Tuesdays. Many U.S. rippers for RNS bought legitimate new albums on Tuesdays, converted them to digital format, and unlawfully uploaded them to RNS-affiliated servers prior to any other Internet music piracy group. There was also a handful of "Tuesday Release" rippers in other countries who were able to, for some period of the conspiracy, legitimately purchase albums at times prior to official U.S. release (because the music industry sometimes released albums in some countries prior to the opening of U.S. retail establishments). These overseas RNS rippers were able to procure the albums in their home countries, rip them to digital format, and unlawfully upload them to RNS-affiliated servers around the world before the U.S. release.

5. After an RNS member acquired a sound recording that had not yet been illegally distributed on the Internet, the member would create a digital reproduction of the sound recording, "tag" the title of the infringing copy in a way that identified RNS as the source of the infringing

copy, and distribute it to computer servers throughout the world using File Transfer Protocol ("FTP"). Some of these servers were reserved only for RNS members, while others were accessible to other Internet piracy groups affiliated with RNS. From there, often within a matter of hours, the pirated works were further distributed globally, filtering down to peer-to-peer and other public file sharing networks accessible to anyone with Internet access.

II.  Defendants

6.  ADIL R. CASSIM. At all times relevant to this indictment, defendant ADIL R. CASSIM, also known by his screen name "Kali", was a resident of California. For some period during the RNS conspiracy, CASSIM was the leader of RNS and made decisions about group operations.

7.  MATTHEW D. CHOW. At all times relevant to this indictment, defendant MATTHEW D. CHOW, also known by his screen name "RL", was a resident of Missouri City, Texas, which is located in the Southern District of Texas. CHOW was initially contacted in 2000 to help with the graphic design of the identification file used to "tag" RNS releases (usually known as the "info" or ".nfo" file). Later, he became a Tuesday release ripper for the group.

III.  The Conspiracy and its Object

8.  From at least 1997 and continuing until approximately January 2007, in the Southern District of Texas and elsewhere, members of RNS conspired and agreed to willfully infringe copyrights with others known and unknown to the government; that is, during a 180-day period, defendants herein did conspire and agree with others, including but not limited to a member of RNS, named Patrick L. Saunders, known by the screen name "DALIVEONE," to reproduce and distribute at least ten infringing copies of one or more copyrighted works, with a total retail value of more than

$2,500, for purposes of private financial gain, in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18, United States Code, Section 2319(b)(1). It was a further object of the conspiracy, from June 2005 to January 2007, to distribute at least one copyrighted work being prepared for commercial distribution by making that work available on a computer network accessible to members of the public, with the knowledge that the work was being prepared for commercial distribution, in violation of Title 17, United States Code, Section 506(a)(1)© and Title 18, United States Code, Section 2319(d)(2).

IV. <u>Way, Manner, and Means of the Conspiracy</u>

9. It was part of the conspiracy that the defendants and other members of the Internet music piracy group known as "Rabid Neurosis" would obtain, rip (i.e., convert to computer format), and distribute copyrighted sound recordings, including sound recordings that were being prepared for commercial distribution, to group-affiliated FTP Sites throughout the world. Among thousands of copyrighted sound recordings that RNS members reproduced and distributed illegally on the Internet were: "The Black Album" and "Kingdom Come" by the artist Jay-Z, "Encore" by the artist Eminem, "How to Dismantle an Atomic Bomb," by the group U2, "Thunderbird" by the artist Cassandra Wilson, "Get Rich or Die Tryin'" and "The Massacre" by the artist 50 Cent, "Elephunk" by the group Black Eyed Peas, "Back to Basics" by the artist Christina Aguilera, and "Infinity on High" by the group Fall Out Boy.

10. It was further part of the conspiracy that certain members of the conspiracy would operate and maintain group-controlled computer servers, known as affiliate servers, containing thousands of unauthorized copies of copyrighted works, including software, games, movies, and music, for the reward and benefit of group members and others who supplied infringing sound

recordings to the RNS group. These servers were also accessible to members of other Internet piracy groups that were affiliated with RNS. The primary servers housing vast amounts of pirated copyrighted content that were affiliated with RNS were named "B52," "POT," "BNK" and "SPAWN." It was a further part of the conspiracy that a member of RNS maintained a server known as "BTR", which stored large volumes of infringing sound recordings RNS members had illegally reproduced.

Overt Acts

11.    It was further part of the conspiracy that the following acts in furtherance of and to effect the objects of the above-described conspiracy were committed in the Southern District of Texas and elsewhere:

    a.    In furtherance of the conspiracy, on or about January 16, 2007, using a computer located in the Southern District of Texas, Defendant MATTHEW D. CHOW, using the alias "RL", connected to the private Internet Relay Chat ("IRC") channel "#talisman" used by members of RNS to discuss and coordinate the illegal reproduction and distribution of copyrighted sound recordings. During the January 16, 2007 session, members of RNS, including CHOW, defendant ADIL R. CASSIM, (a/k/a "THE_RULERS_BACK"), and co-conspirator PATRICK SAUNDERS (a/k/a "DALIVE1"), discussed shutting down the group and destroying evidence following law enforcement's seizure of an RNS-affiliated server.

    b.    In furtherance of the conspiracy, during the January 16, 2007 chat session in the #talisman IRC channel, members of RNS, including defendants CHOW and CASSIM, discussed RNS' forthcoming unauthorized distribution of copyrighted

5

sound recordings, namely, the album "Infinity on High" by recording artists Fall Out Boy and the album "The Confessions Tour" by the recording artist Madonna.

c.  In furtherance of the conspiracy, on or about September 30, 2006, using a computer located in the Southern District of Texas, Defendant MATTHEW D. CHOW, using the alias "RL", connected to the private IRC channel known as "#RNS," which members of RNS used to search for infringing copies of movies, television shows, software and sound recordings that were stored on RNS' headquarters server and affiliated servers. During the IRC session on September 30, 2006, CHOW entered the search "!mp3search george strait," which commenced a search for infringing copies of sound recordings by the artist, George Strait on computer servers affiliated with RNS.

d.  In furtherance of the conspiracy, on or about November 12, 2000, defendant MATTHEW D. CHOW, using a computer in the Southern District of Texas, sent an email providing CHOW'S RNS alias and contact information to the RNS member who coordinated the activities of RNS' rippers.

(All in violation of Title 18, United States Code, Section 371).

## FORFEITURE

Pursuant to Rule 32.2(a), the defendants herein are hereby notified that, if convicted of the offense charged in Count One above, they shall forfeit to the United States, pursuant to 18 U.S.C. § 2323(b), any property that was used or intended to be used to commit or facilitate the commission of an offense involving 17 U.S.C. § 506; 18 U.S.C. § 2319, including but not limited to computers and computer media.

A TRUE BILL:

ORIGINAL SIGNATURE ON FILE

Foreperson of the Grand Jury

Tim Johnson
United States Attorney

*(signature)*

Mark McIntyre
Assistant United States Attorney

Tyler G. Newby
Trial Attorney
U.S. Department of Justice
Computer Crime & Intellectual Property Section