# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **v.** | § |
| | § **CRIM. NO. 4:09-cr-0609** |
| **ADIL R. CASSIM and MATHEW D.** | § |
| **CHOW,** | § |
| | § |
| **Defendants.** | § |

## MEMORANDUM AND ORDER

The indictments in this case allege that Defendant Mathew D. Chow ("Chow") and Defendant Adil R. Cassim ("Cassim") ("Defendants" collectively") conspired and agreed to willfully infringe copyrights in violation of 17 U.S.C. Section 506(a)(1)(A) and 18 U.S.C. Section 2318(b)(1) for purposes of private financial gain. Pending before the Court is Chow's Motion to Suppress (Doc. No. 26), Defendants' Motion to Bifurcate Trial (Doc. Nos. 22, 30), the Government's Motion for Pre-trial Notice of 404(b) Evidence (Doc. No. 48), Defendants' Motion *in Limine* Regarding the Term "Music Piracy" (Doc. Nos. 25, 27), and Cassim's Objection to Government Exhibit 31 (Doc. No. 51).[1]

## I.   MOTION TO SUPPRESS

Defendant Chow moves to suppress written and oral statements that he gave to law enforcement on March 6, 2009, at his home, regarding his involvement with Rabid Neurosis ("RNS"), a group accused of illegally copying and distributing copyrighted music recordings. Chow argues that the statements were not voluntarily offered in

---

[1] These Motions were previously heard in the Eastern District of Virginia by the Honorable Leonie M. Brinkema. While taking her rulings into consideration, this Court will make an independent assessment of each of these issues.

violation of the Self-Incrimination Clause of the Fifth Amendment of the United States Constitution. The Court holds that this Motion must be denied.

First, under well-established precedent, Defendant Chow was not in custody when the statements in question were made. *See, e.g., Beckwith v. United States*, 425 U.S. 341, 347 (1976) (noting that *Miranda* requirements were grounded on the custodial aspects of the situation and not on the subject matter of the interview, and that an interview conducted in a private home did not present the custodial situation contemplated by the *Miranda* Court); *U.S. v. Gonzales*, 121 F.3d 928, 939-40 (5th Cir. 1997) (noting that a suspect is "in custody" for purposes of *Miranda* when he is placed under formal arrest or when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest (citing cases)).  Although the court is troubled by the fact that the police officers arrived at Chow's home unannounced and were less then forthcoming with both Chow and his mother as to the nature and purpose of their visit, the fact that Chow was in his own home, during the day, and in close proximity to his mother when the questioning occurred suggests that this was not custodial interrogation. Thus, the FBI agent had no obligation to inform Chow of his *Miranda* rights.

Chow argues, however, that the facts nonetheless demonstrate that his statements to the law enforcement officers were not voluntary, because the agents did not inform him that he was under investigation. The Fifth Circuit has held that statements made by a suspect are not invalid merely because the police interrogators did not advise him of the subject matter of the upcoming interrogation, or because the suspect did not have a full appreciation of the consequences flowing from the evidence in the case. *Barnes v.*

*Johnson*, 160, F.3d 218, 223 (5th Cir. 1998). Moreover, *Barnes* was decided in the context of custodial interrogation and explicitly addressed the suspect's waiver of his *Miranda* rights, which further suggests that while the agent's lack of candidness here is undoubtedly troubling, it does not render Chow's *non*-custodial confession involuntary.

In further support of his argument, Chow also argues that both he and his mother asked the FBI agents whether he should have a lawyer during their conversation, to which they replied "No, we just need to get some information. . . ." Chow argues that the FBI agents therefore exploited Chow's naivete and deliberately misled him as to the nature of their inquiries, which renders his comments inadmissible. The Government insists, however, that neither Chow nor his mother ever inquired about an attorney.

Even if this Court were to resolve this factual conflict in Chow's favor, because his confession occurred in a non-custodial setting, the Court must acknowledge that he had no formally recognized right to have an attorney present. Therefore, even if Chow's statements constituted an assertion of such a right, the agents had no legal obligation to recognize such a request.[2] The Circuit cases on which Chow relies in arguing that his inquiry about an attorney and the agents' response rendered the confession involuntary are accordingly inapposite. Those cases involved situations in which the defendants' inquiries as to an attorney occurred in a *custodial* setting. Indeed, in *U.S. v. Anderson*, 929 F.2d 96, 102 (2d Cir. 1991), the Second Circuit explicitly recognized that the government's misleading statements as to the defendant's need for an attorney, combined

---

[2] The Court recognizes, however, that precedent strongly suggests that, even in a custodial setting, Chow's statements would not be recognized as an unambiguous invocation of his right to an attorney. *See Davis v. U.S.*, 512 U.S. 452, 459-60 (1994); *U.S. v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) (holding that officers are not obligated to clarify whether ambiguous or equivocal comments are intended to be an invocation of the right to an attorney).

with the "already coercive atmosphere inherent in custodial interrogation," rendered the confession involuntary. Here, the fact that this was not a custodial interrogation suggests that the inherently coercive nature of questioning by law enforcement officials was significantly less pronounced. That fact creates a clear distinction from *Anderson*, and weighs heavily against the conclusion that these statements were not made voluntarily.

It is true that even non-custodial confessions can be deemed involuntary. *See Beckwith*, 425 U.S. at 347-48 (noting that non-custodial involuntary statements can occur where "'the behavior of law enforcement official was such as to overbear petitioner's will to resist and bring about confessions not freely determined'" (quoting *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (holding that voluntariness is a question of fact to be determined from the totality of circumstances). However, the Court cannot find, absent a custodial setting, that the circumstances of Chow's questioning rise to the level of coerciveness necessary for this Court to exclude his statements. Therefore, the Court must deny Chow's Motion. This is not, however, the result that the Court would have reached absent controlling precedent.

## II.     MOTION TO BIFURCATE

Defendants also move to bifurcate this trial so that the issues involving guilt are tried separately from the issues involving sentencing. More specifically, Defendants argue that the issue of the value of the allegedly infringed items should be separated from the jury's determination of underlying guilt. Defendants argue that value evidence will cause undue prejudice because the jury is likely to equate the value of the infringed items to the loss suffered by artists in the recording industry.

The indictment contains only one count of conspiracy.  The underlying offenses are contained in 17 U.S.C. Section 506, and 18 U.S.C. Section 2319. Section 2319(a) provides "any person who violates section 506(a) (relating to criminal offenses) of title 17 shall be punished as provided in subsections (b), (c), (d)." 18 U.S.C. § 2319(a). Subsection (b) then states that any person who violates section 506 "shall be imprisoned not more than 5 years . . . if the offense consists of reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2500[.]" 18 U.S.C. § 2319(b). Therefore, this particular provision speaks only to the appropriate punishment to be assigned for violations of the underlying criminal offense. As such, determinations under this section could potentially be severed and tried separately. *United States v. Collamore*, 868 F.2d 24, 27 (1st Cir. 1989) (noting that "a court may divide a trial between a determination of guilt or innocence and imposition of penalty").

However, 17 U.S.C. Section 506, the underlying criminal statute, defines the offense of criminal copyright infringement as infringement committed "by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000 [.]" 17 U.S.C. § 506. Thus, the statute that defines the very crime at issue includes the value of the copyrighted works as an element of the offense. Therefore, the issue of value does not go solely to the punishment stage of these proceedings, as counselors for Defendants suggest. While the statutorily-imposed $1,000 value requirement is undoubtedly minor compared to the measure of the value evidence that the Government will likely present, counsel for Defendants have indicated that they

5

are unwilling to stipulate as to any value amount. The Government must therefore be allowed to present value evidence as an element of the underlying criminal offense. Thus, the Court cannot conclude that bifurcation of the guilt and punishment is appropriate in this case. Accordingly, Defendants' Motion for Bifurcation is denied.

However, the Court does note Defendant's concern that the jury may equate the value of the copyrighted works with the "loss" experienced by artists in the recording industry. To mitigate any such prejudice, the Court is willing to provide a limiting instruction to the jury that evidence of the value of the allegedly infringed work should not be equated with the loss or damages incurred by artists in the industry. The parties should discuss among themselves suitable language for a limiting instruction.

## III.    MOTION TO ADMIT 404(b) EVIDENCE

The Government indicates that it intends to submit evidence that qualifies as character evidence under Federal Rule of Evidence 404(b). More specifically, the Government seeks to admit evidence of the fact, when Defendant Cassim's residence was searched in connection with this alleged crime, the authorities recovered marijuana and marijuana paraphernalia from his residence. Under Federal Rules of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Therefore, the Court must first determine whether the evidence in question is relevant to an issue other than Cassim's character, and second, whether the probative value of the evidence is

outweighed by its undue prejudice. *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).

The Government argues that the recovery of the narcotics is relevant to proving that Cassim is the individual behind the online identity "Kali." The Government maintains that in 2001, "Kali" sent an email with statements indicating that he or she used marijuana, that a file allegedly found in Cassim's computer contains a graphical representation of a marijuana leaf, and that an email address owned by Cassim contains a slang reference to marijuana. The Government therefore alleges that the recovery of marijuana from Cassim's home is necessary to tie him to the name "Kali," who was the alleged leader of the charged conspiracy.

The Court first observes that this evidence at issue is of highly questionable relevance to the issue of identity. There is no evidence that Cassim ever used marijuana, only that it was found in his place of residence. Moreover, the email sent by "Kali" does not definitively show that "Kali" did in fact use or possess marijuana. Finally, even if the Government could convincingly show that both "Kali" and Cassim used marijuana, the Court is not persuaded that use of marijuana is so uncommon that this attribute is an appropriate avenue by which Cassim can be identified and linked to a criminal alias. In addition, that a graphical representation of a marijuana leaf was found on a laptop computer seized from the defendant Cassim's residence is of minimal importance; others may have had easy access to this computer or created the graphic.

Moreover, even if the Court were to find that the evidence is relevant to identity, its limited probative value is far outweighed by its prejudicial effects. Indeed, were the jury members to be presented with evidence that Cassim possessed illegal narcotics, it is

almost certain that they would improperly weigh this information as character evidence against him. This natural instinct is not one that a limiting instruction from the Court could significantly mitigate. Accordingly, the Court holds that this evidence must be excluded as improper character evidence.

## IV.    MOTION *IN LIMINE* REGARDING THE TERM "MUSIC PIRACY"

Defendants seeks to exclude any use of the terms "music piracy" from the jury. They argue that this term is not evidentiary, has no probative value, and is highly inflammatory such that it will create undue prejudice. The Government, in response, argues that this term would be highly probative of the Defendants' knowledge of the unlawful object of the conspiracy. The Court finds that, because this term was and is commonly used to refer to the conduct in question, it will be difficult for witnesses and lawyers to generate an adequate substitute during questioning. It need not, therefore, be entirely excluded. However, the Court invites counsel for Defendants to suggest any possible limiting instructions which, if offered to the jury, might mitigate any possible prejudice that the term might create.

## V.    OBJECTION USE OF COPYRIGHT REGISTRATIONS

Defendant Cassim objects to the Government's Exhibit 31, or certain copyright Registrations associated with the music recordings at issue, obtained from the United States Copyright Office. Defendants argue that this evidence, combined with the testimony of L. Carlos Linares, and employee of the Recording Industry Association of America ("RIAA"), is insufficient to establish the underlying offense of copyright infringement. According to Cassim, Mr. Linares will testify that, based on his comparison, the sound recordings seized during the FBI investigation of RNS are

"reproductions of copyrighted sound recordings that are owned by the RIAA's member companies." Cassim argues that the only admissible evidence of the contents of the copyrighted works is certified copies of the works deposited with the Copyright Office, along with the applications for registration, or by testimony of a witness who has compared the copy to the original work deposited in the Copyright Cffice. According to Cassim, without evidence of what the deposit copies contain, the Government cannot prove that the music files allegedly released by RNS are copies of the registered works.

To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to assess whether the two works are substantially similar. *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999). When presented with the question of the sufficiency of testimonial evidence, the Fifth Circuit has recognized that "copying," or copyright infringement, is an issue to be determined by comparison of the actual works at issue, not credibility. *Id.*

Nonetheless, the Court finds that the circumstances of this case do not warrant a finding that the Government's evidence of the contents of the copyrighted works at issue is insufficient to establish copying. Counsel for Cassim presents an extremely well-articulated and thoughtful argument as to the insufficiency of the Government's evidence. The Court, however, is unpersuaded. First, the Court notes that the cases relied on by Cassim are distinct in material ways. As the Government points out, these cases all involve civil copyright actions, not criminal enforcement of copyright infringement. Moreover, in those cases, testimonial and indirect evidence was being used to show that the copies were "substantially similar" to the copyrighted works, as assessment that is notably more subjective than the contention at issue here that the music distributed was

an *identical* copy of the copyrighted songs. *See, e.g.*, *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986) (holding that original drawings of artist were necessary to determine whether they were substantially similar to drawings used by defendant in his film); *King v. Ames*, 179 F.3d 370 (5th Cir. 1999) (affirming the trial court's finding that witnesses testimony that the deposited recordings were copies of those marketed by defendants was insufficient as proof of copying). Indeed, one of the cases cited by Cassim reinforces this distinction by discussing how the "pirating" of sound recordings is determined on the basis of whether the recordings are duplicated by someone other than the copyright holder, rather than imitated or simulated. *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 800 (6th Cir. 2005).

The Government also intends to present testimony of co-conspirators that they and other members of RNS directly copied popular phonorecords. The Court is persuaded by the Government's argument that the very existence of the commercial phonorecords is proof that these songs were indeed copyrighted, and this proof is only reinforced by the Registrations contained in Exhibit 31. Finally, that this case is being brought as a criminal conspiracy charge further suggests that the holdings related to civil enforcement of copyright laws are inapplicable to this set of fact. As such, the Court cannot conclude that the Government's decision not to present the recordings deposited with the United States Copyright Office renders its evidence of Registration legally insufficient or inadmissible. The Court will, however, allow Defendants to renew this objection during the course of trial, when the Court may rule on it within the context in which the evidence is used and presented.

Cassim also objects to this evidence on the grounds that it does not establish ownership or registration of the copyrights of the sound recordings allegedly infringed in this case. However, because this case is being brought under a criminal conspiracy charge, the Court is persuaded that proof of registration and of copyright ownership by the Government is not required. Indeed, it is questionable whether these elements would be required for criminal prosecution of a substantive charge of criminal copyright infringement, although we do not now conclusively decide this issue.

## VI.   CONCLUSION

For the reasons states in the Memorandum, Chow's Motion to Suppress (Doc. No. 26) is **DENIED**. Defendants' Motion to Bifurcate Trial (Doc. Nos. 22, 30) is **DENIED.** The Government's proposed 404(b) Evidence (Doc. No. 48) is **EXCLUDED**. Defendants' Motion *in Limine* Regarding the Term "Music Piracy" (Doc. Nos. 25, 27) is **DENIED**. Cassim's Objection to Government Exhibit 31 (Doc. No. 51) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** this 12th day of March, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE